## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERTO CAMACHO, JR.,      )
                             )
            Plaintiff,     )
                             )
      v.                     )
                             )   Civil Action No. 16-1644
C.O. BEERS, C.O. L. JOHNSON, C.O.   )
BREWER, C.O. TIMBERMAN, C.O.    )   Chief Magistrate Judge Maureen P. Kelly
GANNON, C.O. CAVANAUGH,     )
SERGEANT F.J. JOHNSON, CAROL   )   Re: ECF Nos. 17 and 38
SCIRE, STEPHANIE WOOD, MARK   )
CAPOZZA, DEPARTMENT OF      )
CORRECTIONS, and LIEUTENANT   )
R. WASHINGTON,             )
                             )
           Defendants.   )

## MEMORANDUM OPINION

**KELLY, Chief Magistrate Judge**

### I. INTRODUCTION

Plaintiff Roberto Camacho, Jr. ("Plaintiff") initiated this action by the filing of a civil complaint on November 8, 2016. ECF No. 4. In the Complaint, Plaintiff alleges violations of the Eighth Amendment (Counts I - III), violation of the First Amendment (Count IV), violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.* (Counts V and VI) and state law claims of assault and battery (Count VII) as well as intentional infliction of emotional distress (Count VIII).

Presently before the Court are the Partial Motions to Dismiss filed on behalf of C.O. Beers, C.O. L. Johnson, C.O. Brewer, C.O. Timberman, C.O. Gannon, C.O. Cavanaugh, Sergeant F.J. Johnson, Carol Scire, Stephanie Wood, Mark Capozza, Lieutenant R. Washington, and the Department of Corrections (collectively, "Defendants"), pursuant to Federal Rule of

Civil Procedure 12(b)(6). ECF Nos. 17 and 38. For the reasons that follow, Defendants' Motions will be GRANTED in part and DENIED in part.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is presently an inmate at SCI-Huntingdon, in Huntingdon, Pennsylvania. Sometime prior to his incarceration in 2009, Plaintiff was involved in a traffic accident in which his left elbow was crushed. ECF No. 4 ¶¶ 18, 48. As a consequence, he allegedly sustained nerve damage, and lost strength and fine motor control in his dominant left hand. Id. ¶ 18. Writing subsequently became difficult, and Plaintiff was unable to complete writing more than one or two sentences at a time. Id. ¶ 19-20.

The Pennsylvania Department of Corrections ("DOC") arranged for Plaintiff to undergo orthopedic surgery in an effort to treat these limitations. Id. ¶ 22. The surgical procedure was performed in October of 2012. Id. On or about October 21, 2012, Plaintiff was allegedly assaulted by a kitchen supervisor at SCI-Huntingdon when Plaintiff's arm was struck with a pot lid. Id. As a result, Plaintiff sustained injuries to the surgical site. Id. ¶¶ 22, 48. Additional surgery was purportedly required, but Plaintiff was forced to retain the services of an attorney because the DOC did not immediately arrange for the same. Id. ¶ 23. At some point thereafter, Plaintiff also filed a grievance pertaining to his assault by the kitchen supervisor. Id. ¶ 66. The DOC eventually approved Plaintiff for a second operation on July 11, 2014. Id. ¶ 24.

In preparation for the second surgery, Plaintiff was transported from SCI-Huntingdon to SCI-Pittsburgh in June of 2014. Id. The procedure was performed on July 11, 2014, as scheduled, on an out-patient basis. Id. ¶¶ 24, 26. Plaintiff was returned to SCI-Pittsburgh the same day, and was placed in the medical unit of the prison for several hours. Id. ¶ 28. While under observation in the medical unit, Plaintiff asked if he could have something to eat, as he had

2

begun fasting in advance of his surgery at or around 5:00 p.m. on July 10, 2014. Id. ¶¶ 26, 28. C.O. L. Johnson refused the request. Id.

On the same evening as the second surgery and following release from the medical unit, C.O. Beers accompanied Plaintiff from the medical unit to the restrictive housing unit ("RHU"). Id. ¶ 31. While en route, C.O. Beers allegedly "slammed" Plaintiff's left arm into the doorway of an elevator. Id. Following his operation, Plaintiff's left arm had been placed into a cast; the cast cracked as a result of the conduct of C.O. Beers. Id. When confronted by Plaintiff, C.O. Beers "laughed and said, 'Oops.'" Id. ¶ 32. Plaintiff requested to be taken back to the medical unit at that time, but C.O. Beers declined to do so. Id. ¶ 33. C.O. Beers further declined to summon medical staff once Plaintiff was placed in his RHU cell. Id. Plaintiff claims that, by that point, blood was seeping through the crack in the cast. Id. ¶ 34.

During the next two days, on July 12 and 13, 2014, Plaintiff repeatedly asked C.O. Brewer, C.O. Timberman, C.O. Gannon, and Lieutenant R. Washington to allow him to see the prison physician or other staff from the medical unit. Id. ¶ 35. All requests were refused. Id. Plaintiff was unable to make written requests due to his inability to write with his left hand. Id. ¶ 36. As such, all of his requests for medical attention were made verbally. Id.

Over the course of the first week following the July 11, 2014, surgery, Plaintiff repeatedly asked C.O. Beers, C.O. L. Johnson, C.O. Brewer, C.O. Timberman, C.O. Gannon, C.O. Cavanaugh, and Sergeant F.J. Johnson to allow him to take a shower in order to keep his incision site clean, per hospital orders. Id. ¶ 41. Plaintiff's requests were denied. Id. As such, Plaintiff allegedly attempted to clean his arm using water from the sink in his cell. Id. ¶ 42. When he also attempted to bathe using water from the sink, water would flow into his surgical dressings and cast, causing the dressing and cast to deteriorate. Id. ¶¶ 42-44. The dressings and

3

cast began to smell, and caused Plaintiff's sutures to become irritated. Id. ¶ 43. Ultimately, Plaintiff removed the cast himself. Id. ¶ 44.

In the ensuing weeks – through approximately August 5, 2014 – Plaintiff continued to make primarily verbal requests to see the prison physician or medical staff. Id. ¶ 45-47. In addition to denial of same, C.O. Beers, C.O. L. Johnson, C.O. Brewer, C.O. Timberman, C.O. Gannon, C.O. Cavanaugh, Sergeant F.J. Johnson, and Lieutenant R. Washington refused to provide Plaintiff with prescribed pain medication, ice for swelling, and cushioning or padding to elevate his arm. Id. ¶¶ 39-40. When permitted to leave his cell, these Defendants would cuff his wrists in such a way as to cause unnecessary pain and further damage to his cast. Id. ¶¶ 37-38.

On July 24, 2014, Plaintiff – through counsel – initiated a claim in the United States District Court for the Middle District of Pennsylvania regarding the kitchen assault at SCI-Huntingdon, and subsequent denials of prompt medical care. Id. ¶ 25. It is believed that Defendants' knowledge of that claim, as well as earlier grievances filed by Plaintiff against SCI-Huntingdon staff, prompted his alleged mistreatment at SCI-Pittsburgh. Id. ¶¶ 29-30.

On November 8, 2016, Plaintiff filed the instant Complaint. ECF No. 4. On March 3, 2017, Defendants C.O. Beers, C.O. L. Johnson, C.O. Brewer, C.O. Timberman, C.O. Gannon, C.O. Cavanaugh, Sergeant F.J. Johnson, Carol Scire, Stephanie Wood, Mark Capozza, and the Department of Corrections filed the initial Partial Motion to Dismiss and Brief in Support seeking dismissal of Counts II, III, V, VI, VII, and VIII of the Complaint for failure to state claims upon which relief may be granted. ECF Nos. 17-18. Plaintiff's Brief in Opposition was filed on April 25, 2017. ECF No. 29. Following the identification of Lieutenant John Doe as Lieutenant R. Washington, the caption of the instant action was amended to substitute Lieutenant Washington for Lieutenant Doe. ECF No. 27. On July 26, 2017, Defendant Lieutenant R.

Washington filed a Motion for Partial Dismissal and Brief in Support, seeking dismissal of Counts II and VIII. ECF Nos. 38-39. Plaintiff filed a Brief in Opposition on August 11, 2017. ECF No. 42. The matter is fully briefed, and ripe for disposition.

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a short and plain statement of a claim, and show that the pleader is entitled to relief. Dismissal of a complaint or portion of a complaint is justified under Federal Rule of Civil Procedure 12(b)(6) when a claimant fails to sufficiently state a claim upon which relief can be granted. Avoiding dismissal under Rule 12(b)(6) requires a pleading party's complaint to provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "'nudge his or her claims across the line from conceivable to plausible.'" Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (quoting Bell Atlantic Co. v. Twombly, 550 U.S. 544, 556, 570 (2007)).

In assessing the merits of a claim subject to a motion to dismiss, a court must engage in a two-part analysis. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). First, factual and legal elements of a claim must be distinguished. Id. Second, it must be determined whether the facts as alleged support a "plausible claim for relief." Id. In making the latter determination, the court must be mindful that the matter pleaded need not include "detailed factual allegations," Phillips, 515 F.3d at 231 (quoting Twombly, 550 U.S. at 555), and the court must construe all alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. Id. at 228 (citing Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003)).

A well-pleaded complaint, even when "it strikes a savvy judge that actual proof of...facts is improbable," will not be dismissed as long as the pleader demonstrates that his or her claim is plausible. Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 555-56). A pleading party need only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" Fowler, 578 F.3d at 213 (quoting Graff v. Subbiah Cardiology Assoc., Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)). Moreover, pleadings filed by *pro se* litigants are to be liberally construed, and courts should be flexible when applying procedural rules. Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244 (3d Cir. 2013) (citing Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011)).

Nevertheless, the facts pled do need to raise the expectation of relief above a purely speculative level, and must include more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Phillips, 515 F.3d at 231-32 (quoting Twombly, 550 U.S. at 554-56). Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of an entitlement to relief." Id. at 232. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Fowler, 578 F.3d at 211 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)), and even *pro se* litigants are required to plead facts sufficient to supports their claims, and cannot flout procedural rules. Mala, 704 F.3d at 245.

IV. DISCUSSION

A. Section 1983 Claims

42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

Congress conceived Section 1983 as a safeguard against deprivations of individual rights conferred by federal statutes and the United States Constitution. City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 119 (2005) (citing Maine v. Thiboutot, 448 U.S. 1, 4 (1980)). In order to properly state a valid Section 1983 claim, a plaintiff must demonstrate that an individual acting under color of law violated enumerated constitutional or statutory rights. Berg v. Cnty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000). When evaluating such a claim, the Court must "'identify the exact contours of the underlying right said to have been violated' and determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (quoting Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)). The Court must then determine whether a plaintiff demonstrated a defendant's "'personal involvement in the alleged wrongs.'" Id. (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). "A plaintiff 'must portray specific conduct by state officials'" to make such a showing. Id. (quoting Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970)).

At Count II of the Complaint, Plaintiff argues that his Eighth Amendment rights were violated by the deliberate indifference of Defendants to his serious medical needs. ECF No. 4 at 24. At Count III of the Complaint, Plaintiff asserts that Defendants Wood, Lieutenant R. Washington, and Capozza are liable in a supervisory capacity for the Eighth Amendment violations due to their failure to adequately manage the provision of medical care. Id. at 25. In their respective Motions, Defendants argue that Plaintiff has failed to plead sufficient facts to set forth these claims. ECF Nos. 18 at 6-9; 39 at 6-9.

## 1. 8th Amendment/Deliberate Indifference - Count II

It is well-established that the Eighth Amendment of the United States Constitution "proscribes more than physically barbarous punishments," but also the provision of sub-standard medical care to an inmate "who cannot by reason of the deprivation of his liberty, care for himself." Estelle v. Gamble, 429 U.S. 97, 102-04 (1976) (citations omitted). See also Farmer v. Brennan, 511 U.S. 825, 832 (1994) (Prisons "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care."). In order to state a claim for deliberate indifference to medical needs, a claimant must make "(1) a subjective showing that 'the defendants were deliberately indifferent to his or her medical needs' and (2) an objective showing that 'those needs were serious.'" Pearson v. Prison Health Serv., 805 F.3d 526, 534 (3d Cir. 2017) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).

Defendants first argue that Plaintiff has not pled a serious medical need that was ignored by Defendants. They contend that, at best, Plaintiff's allegations establish that he was in pain. However, Defendants point out that Plaintiff does not allege a diagnosis by a treating physician of a need for medical care. ECF Nos. 18 at 6; 29 at 6-9. The United States Court of Appeals for the Third Circuit has held that a medical condition may properly be considered "serious" when it is "diagnosed by a physician as requiring treatment, is easily recognizable by a lay person, or by 'reference to the effect of denying the particular treatment,'" i.e., when denial or delay of treatment constitutes "'unnecessary and wanton infliction of pain,' or 'causes an inmate to suffer a life-long handicap or permanent loss.'" Imhoff v. Temas, 67 F.Supp.3d 700, 710 (W.D. Pa. 2014) (quoting Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)).

In the instant case, the medical need which Plaintiff argues merited treatment was his cracked cast from which blood was seeping. He also argues that he was entitled to the provision of prescribed pain medication, ice for swelling, cushioning for support of his arm, and the means to keep the surgical site clean, per hospital orders. His inability to properly clean himself allegedly led to water penetrating the cast and surgical dressings, resulting in an unpleasant odor and a disintegrating cast. As to the cracked cast seeping blood, this condition arose the same day as Plaintiff underwent an orthopedic surgical procedure, and was allegedly the result of unprovoked physical contact with C.O. Beers. Plaintiff sought medical assistance for this issue from at least July 11 through July 13, 2014, and asked to see a physician as late as August 5, 2014. All requests were denied. Taken as true, Plaintiff's factual allegations paint a picture of an objectively serious medical need which would be apparent to a lay person. It is also reasonable to conclude, based upon Plaintiff's assertions in the Complaint, that failure to address a cast that was cracked and seeping blood immediately following surgery could lead to unnecessary and wanton infliction of pain, or even long-term complications. Similarly, the disintegration of a cast meant to protect and immobilize an arm upon which surgery was recently performed is an objectively serious medical need which would be apparent to a lay person. Thus, Plaintiff has pled sufficient factual matter to conclude that he exhibited serious medical needs.

Nevertheless, Defendants also argue that Plaintiff's allegations of deliberate indifference were merely conclusory, and that non-medical prison personnel cannot be held liable for deliberate indifference to serious medical needs. ECF Nos. 18 at 7-8; 39 at 6-9. Courts have long characterized deliberate indifference as a "'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" Parkell v. Danberg, 833 F.3d 313, 335 (3d

9

Cir. 2016) (quoting Nicini, 212 F.3d at 811). As such, a prison official may be said to be deliberately indifferent if he or she was aware of a substantial risk of serious harm to an inmate, and disregarded that risk by failing to take reasonable measures to mitigate it. Id. (citing Chavarriaga, 806 F.3d at 229). However, the burden is upon the claimant to show that a prison official had knowledge of facts from which he or she could infer that there existed a substantial risk of harm, and that the prison official drew the inference. Id. (citing Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259 (3d Cir. 2010)). "'It is not enough merely to find that a reasonable person would have known, or that the defendant should have known'" of the risk. Id. (quoting Farmer, 511 U.S. at 843 n. 8).

In the past, deliberate indifference has been found to exist where a prison official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." Id. at 337 (citing Rouse, 182 F.3d at 197). Yet, where an inmate has received some medical treatment, deliberate indifference may be difficult to demonstrate. Palakovic v. Wetzel, 854 F.3d 209, 227 (3d Cir. 2017) (citing Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993)). This is particularly true when a non-medical prison official is a named defendant, because such personnel are generally justified in the belief that an inmate is in capable hands. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

In the instant case, however, Plaintiff is not simply claiming to have been denied care for an existing ailment. Although he may, arguably, have received medical attention while held in the medical unit of SCI-Pittsburgh following surgery, the complained of injuries for which he later sought treatment while in the RHU were sustained after he left the medical unit; i.e., the cracked cast and seeping blood, and the wet surgical dressing and disintegrating cast. Plaintiff

10

was not previously under the care of prison medical staff for these issues. Accordingly, the non-medical personnel to whom Plaintiff complained – C.O. Beers, C.O. L. Johnson, C.O. Brewer, C.O. Timberman, C.O. Gannon, C.O. Cavanaugh, Sergeant F.J. Johnson, and Lieutenant R. Washington – cannot justify their alleged refusal to obtain medical care for Plaintiff upon any assertion that Plaintiff was in "capable hands." Moreover, there is no concern here that holding these non-medical personnel liable would strain the prison's division of labor or promote interference by non-medical personnel in the decision-making of medical staff. Spruill, 372 F.3d at 236.

At present, Plaintiff has pled that C.O. Beers, in particular, as well as C.O. L. Johnson, C.O. Brewer, C.O. Timberman, C.O. Gannon, C.O. Cavanaugh, Sergeant F.J. Johnson, and Lieutenant R. Washington, were aware of the condition of his arm and cast following surgery and denied him access to medical care knowing – and perhaps even intending – that Plaintiff would suffer serious harm. ECF No. 4 ¶¶ 88-92. Prison officials may not "'deny reasonable requests for medical treatment when such denial exposes the inmate to undue suffering or the threat of tangible injury.'" Palakovic, 854 F.3d at 228 (quoting Monmouth Cnty. Corr. Inst. Inmates, 834 F.2d at 346). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104. Plaintiff has, therefore, pled facts sufficient to maintain a claim for deliberate indifference to serious medical needs at Count II of the Complaint as against C.O. Beers, C.O. L. Johnson, C.O. Brewer, C.O. Timberman, C.O. Gannon, C.O. Cavanaugh, Sergeant F.J. Johnson, and Lieutenant R. Washington.

11

As to Defendants Scire and Capozza, Plaintiff's claims in Count II relate only to the handling of two grievances. ECF No. 4 ¶ 90. As such, Plaintiff has not pled facts sufficient to sustain such a claim against Scire or Capozza. He failed to show that either Scire or Capozza were in possession of knowledge sufficient to infer that Plaintiff was at risk of serious harm, and that they drew such an inference. Consequently, the Motion to Dismiss will be granted as to the claims in Count II against Scire and Capozza.

### 2.    8th Amendment/Failure to Supervise - Count III

At Count III, Plaintiff claims that Defendants Wood, Lieutenant R. Washington, and Capozza are liable for the other Defendants' Eighth Amendment violations due to their failure to adequately supervise the other Defendants. In response, Defendants Wood and Capozza argue that this claim should be dismissed, because liability under § 1983 may not be predicated upon vicarious liability or *respondeat superior*. ECF Nos. 18 at 9; 39 at 7. Plaintiff must allege that Wood and Capozza took affirmative action to bring about the alleged Constitutional violation; failure to act is not enough. Id.

As noted by Defendants, a claimant may not premise individual liability under § 1983 on the doctrine of *respondeat superior*. Chavarriaga, 806 F.3d at 222 (citing Parratt v. Taylor, 451 U.S. 527, 537 n. 3 (1981)). Neither is vicarious liability available; a claimant must allege facts sufficient to demonstrate that a defendant was personally involved in a constitutional violation. Phillips v. Northampton Co., P.A., 687 F.App'x 129, 131 (3d Cir. 2017) (citing Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)). This may be done by asserting facts sufficient to show that the defendant established a policy, practice, or custom that directly caused a constitutional violation, or that the defendant participated in, directed, or had knowledge of and acquiesced to conduct causing a constitutional violation. Id. at 131-32 (citing A.M. ex rel.

12

J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)).

### a. Defendant Wood

With respect to Defendant Wood, Plaintiff charges that she was the Health Care Administrator at SCI-Pittsburgh, and was responsible for designing and implementing procedures to insure that inmates had access to proper medical and post-surgical care, including timely encounters with medical staff. ECF No. 4 ¶ 55. Instead, Plaintiff claims that Wood failed to provide for those medical needs. Id. ¶¶ 56, 94. Plaintiff further asserts that Wood encouraged and acquiesced to abuse and neglect of surgical inmates, including housing inmates in the RHU instead of the medical unit. Id.

In support of the Motion to Dismiss, Wood argues that Plaintiff must show her direct involvement in the alleged wrong. ECF No. 18 at 9. Specifically, she argues:

> It is not enough to simply state that a Defendant is a supervisor therefore he/she is responsible for the alleged misconduct and a § 1983 claim cannot be predicated upon a theory of vicarious liability or *respondeat superior*, *Rizzo* [*v. Goode*], *supra,* 423 U.S. 362 [1976], nor can a § 1983 claim be based on a failure to act. *Commonwealth of Pennsylvania v. Porter*, 659 F.2d 336 (3d Cir. 1981) *cert. denied* 458 U.S. 1121 (1982).

ECF No. 18 at 9.

As to Defendant Wood, Plaintiff's conclusory allegations are insufficient to demonstrate that she may be held liable in an individual capacity as a supervisor. At most, Plaintiff has pled facts which tend to show that Wood simply failed to act. No facts have been alleged which show that Wood was involved in the acts complained of, or that these acts were undertaken with her knowledge and acquiescence. Evancho, 426 F.3d at 353. Count III must be dismissed as to Wood.

13

### b.  Defendant Capozza

Turning to Defendant Capozza, Plaintiff claims that as the Superintendent, he was responsible for the conduct of all personnel at SCI-Pittsburgh, knew directly or constructively of similar issues with other inmates in the past, and established, fostered, encouraged, or tolerated the abusive practices maintained by the other named Defendants.  ECF No. 4 ¶¶ 59-63. However, as the Court found with Wood, Plaintiff advances only conclusory allegations as to the conduct of Capozza, and fails to provide facts which show that Capozza was involved in the acts complained of in Counts I and II, or even had knowledge of same.  Evancho, 426 F.3d at 353. Accordingly, Count III must be dismissed as to Capozza.

### c.  Defendant R. Washington

Finally, as to Lieutenant R. Washington, Plaintiff asserts that he established, encouraged, and tolerated the abusive practices of the other named Defendants.  ECF No. 4 ¶ 52.  Lieutenant R. Washington was the morning shift supervisor for the RHU, and was allegedly aware of prior complaints made by other inmates in similar circumstances.  Id. ¶¶ 52, 54.  It is also pled that Washington was aware of the state of Plaintiff's cast, and that requests for medical attention had been made directly to Washington and denied by Washington.  Id. ¶¶ 35, 41.  Plaintiff also indicates that Washington was aware that other Defendants had denied Plaintiff's requests for medical attention.  Id. ¶¶ 51-54.  Thus, Plaintiff asserts, the correctional officers monitoring Plaintiff were able to get away with assaulting him, and denying him access to medical attention, medication, ice, supportive cushioning, and the means to properly clean his arm.  Id. ¶ 52.

The Court notes that Defendant Lieutenant R. Washington did not seek partial dismissal of the Complaint as to Count III.  Even if he had so moved, viewed in the light most favorable to Plaintiff as the non-moving party, sufficient factual matter has been pled to demonstrate that

Lieutenant R. Washington participated in, directed, and/or had knowledge of and acquiesced to conduct causing the alleged constitutional violations.

### B. ADA and Rehabilitation Act Claims - Counts V and VI

In the Complaint, Plaintiff alleges that, prior to his incarceration, he suffered a crushing injury of his left elbow. ECF No. 4 ¶ 18. As a result of nerve damage, Plaintiff lost strength and fine motor control in his left hand and was unable to write more than a line or two at a time. Id. ¶¶ 18-19. Consequently, Plaintiff claims that he was disabled and unable to perform the major life activity of writing so as to communicate with his family and within the prison by way of writing sick call slips or grievances. Id. ¶¶ 20, 21 and 105.

At Count V of the Complaint, Plaintiff alleges that he was discriminated against by the DOC because of his disability by the denial of an accommodation for his inability to complete written sick call slips and four-ply grievance forms, which resulted in his inability to obtain medical treatment. Id. ¶¶ 104-06. In Count VI, Plaintiff further claims that he was denied access by the DOC to prison medical facilities, treatment and services to which non-disabled inmates had access. Id. ¶¶ 107-09. Specifically, Plaintiff alleges that the DOC confined him to the RHU for nearly two months after his surgery, barred him from the shower room for eight days, deprived him of food for lengthy periods, deprived him of prescribed medication and denied him ice and a cushion, which were needed post-surgery. Id. ¶ 108. Accordingly, Plaintiff asserts that the DOC violated the ADA and the Rehabilitation Act.

In the Motion to Dismiss, the DOC seeks dismissal of Counts V and VI on the basis that Plaintiff failed to plead facts demonstrating that he has a qualifying disability in the context of these two statutes, or that his alleged denial of medical care was a result of his disability. ECF No. 18 at 10-13.

15

The United States Supreme Court in <u>Pa. Dep't of Corrections v. Yeskey</u>, 524 U.S. 206 (1998), expressly held that Title II of the ADA applies to state prisons, and the Pennsylvania DOC specifically.

> Here, the ADA plainly covers state institutions *without* any exception that could cast the coverage of prisons into doubt. Title II of the ADA provides:
>
> > "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.
>
> State prisons fall squarely within the statutory definition of "public entity," which includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." § 12131(1)(B).

<u>Id.</u> at 210.

Because the plain text of Title II of the ADA unambiguously extends to state prison inmates, this Court must consider whether Plaintiff has properly stated a claim of disability discrimination.[1]

In order to state a claim under Title II of the ADA, Plaintiff must allege facts which demonstrate: "(1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability. <u>Bowers v. Nat'l Collegiate Athletic Ass'n</u>, 475 F.3d 524, 553 n. 32 (3d Cir. 2007); <u>see also</u> <u>Wagner v. Fair Acres Geriatric Center</u>, 49 F.3d 1002, 1009 (3d Cir. 1995).

In order to invoke the protections of the ADA, Plaintiff must establish that he had a disability within the meaning of the ADA. The ADA defines a "qualified individual with a disability" as:

---

[1] The ADA and the Rehabilitation Act have the same standard of liability and are to be interpreted consistently. <u>Macfarlan v. Ivy Hill SNF, LLC</u>, 675 F.3d 266, 274 (3d Cir. 2012).

an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). Under the ADA and the Rehabilitation Act, a "disability" may be: (1) "a physical or mental impairment that substantially limits one or more major life activities;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

In the instant case, the DOC attacks Plaintiff's allegations of disability by arguing that he does not suffer from an impairment that substantially limits a major life activity. ECF No. 18 at 10-12.

The United States Court of Appeals for the Third Circuit has held that in order to establish the existence of a statutorily protected disability, a claimant must: "show that she has an impairment; identify the life activity that she claims is limited by the impairment; and prove that the limitation is substantial." Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 378, 382 (3d Cir. 2004) (citing Bragdon v. Abbott, 524 U.S 624, 631 (1998)).

The determination of whether an individual is substantially limited in a major life activity must be made "on a case-by-case basis." Albertson's Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999). What matters is not the name or diagnosis of the impairment but "the effect of the impairment on the life of the individual." Id. "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). "Nonetheless, not every impairment will constitute a disability within the meaning of this section." Id.

In Matthews v. Pa. Dep't of Corr., 613 F. App'x 163 (3d Cir. 2015), the United States

Court of Appeals for the Third Circuit recognized that:

> ... the 2008 ADA Amendments Act ("ADAAA") was enacted to clarify that the definition of "disability" should be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted." 42 U.S.C. § 12102(4)(A). Therefore, courts must interpret the term "substantially limits" consistently with the liberalized purposes of the ADAAA. Id. § 12102(4)(B). The EEOC subsequently updated its regulations to provide that impairments lasting fewer than six months may be substantially limiting. 29 C.F.R. § 1630.2(j)(1)(ix). A comment on the rule provides the following example: "[I]f an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability." 29 C.F.R. § 1630.2(j)(1)(ix) (App.). Thus, under the current regulations, the duration of an impairment is just one factor to consider in determining whether an impairment substantially limits a major life activity.

Id. at 167-68.

In Matthews, the Court of Appeals recognized the challenge of interpreting the ADAAA's effect on short-term-disability based claims. In assessing whether an impairment substantially limits a major life activity, the Court determined that it "must set aside the mild-sounding diagnosis and perform an individualized assessment of the effect of the impairment on the life of" the plaintiff. Id.

In the instant case, there is no dispute that Plaintiff has pled facts in the Complaint sufficient to support the existence of a physical impairment, i.e., a crushed elbow with nerve damage resulting in difficulty writing. The issue is whether the alleged impairment substantially limited a major life activity. "A major life activity need not constitute volitional or public behavior; it need not be an activity that is performed regularly or frequently; but it does have to have importance to human life comparable to that of activities listed in the regulatory examples." Fiscus, 385 F.3d at 384. Moreover, "a substantial limitation of a major life activity does not

18

mean impossibility or even great physical difficulty; rather, substantial limitation is weighed in a broad, practical sense, and may include non-physical factors." Id.

Here, Plaintiff claims that the major life activity of communication was substantially limited because he had difficulty writing more than two lines at a time. He was relegated to primarily verbal communication. As noted by Plaintiff in his Brief in Opposition, the ADA characterizes "communicating" as a major life activity. ECF No. 29 at 13 (citing 42 U.S.C. § 12102(2)(A)). However, in order for the Court to determine whether Plaintiff's communication was substantially limited by his impaired arm, the severity, duration, and permanency of the impairment must be assessed. Johnson v. Amtrak, 390 F. App'x 109, 113 (3d Cir. 2010).

In the instant Complaint, Plaintiff provides limited information regarding the severity, duration, or permanency of his impairment, although he does state that at the time of the events in question, he could not write more than two lines at a time. Plaintiff alleges facts which illustrate that his difficulty writing hindered his ability to communicate in the context of a prison setting in order to obtain medical care and file grievances related thereto.

At the motion to dismiss stage, this Court is bound to take all factual allegations as true and make all reasonable inferences in Plaintiff's favor. As such, this Court finds that Plaintiff in his Complaint does allege a disability. Additional facts will need to be developed during discovery relative to whether he was in fact disabled within the meaning of the ADA and the Rehabilitation Act. As such, Defendants' Motion to Dismiss Counts V and VI of the Complaint as to the DOC is denied.

### C.    Pendent State Law Claims

At Counts VII and VIII of the Complaint, Plaintiff asserts state law claims for assault and battery, and intentional infliction of emotional distress ("IIED"). ECF No. 4 at ¶¶ 110-22.

19

Count VII pertains only to C.O. Beers. Id. ¶¶ 110-14. Count VIII asserts an IIED claim against C.O. Beers, C.O. Brewer, C.O. Timberman, C.O. Gannon, C.O. Cavanaugh, Sergeant F.J. Johnson, Lieutenant R. Washington, Scire, and Capozza. Id. at ¶¶ 115-22.

### 1. Assault and Battery - Count VII

In the Motion to Dismiss, C.O. Beers argues that the assault and battery claims should be dismissed on the ground of sovereign immunity. ECF No. 18 at 13-14. Beers contends that at the time of the alleged incident, he was a state employee acting within the scope of his employment. Id. As such, Count VII should be dismissed. Id.

"Article I, Section 11 of the Pennsylvania Constitution provides, in pertinent part, that 'suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.'" Ickes v. Grassmeyer, 30 F.Supp.3d 375, 397 (W.D. Pa. 2014) (quoting Pa. Const., Art. I, § 11). In Pennsylvania, public officials and employees enjoy the protection of sovereign immunity when acting within the scope of their duties. Id. (citing 1 Pa. Cons. Stat. § 2310). This immunity has been waived only with respect to damages arising from negligent acts by public officials and employees. Id. at 398 (citing 42 Pa. Cons. Stat. § 8522).

The torts of assault and battery are regarded as intentional torts in Pennsylvania. Id. (citing Gene's Rest., Inc. v. Nationwide Ins. Co., 548 A.2d 246, 247 n. 2 (Pa. 1988)). As such, sovereign immunity has not been waived for claims seeking relief for damages resulting from these torts. Id. (citing Aetna Cas. & Surety Co. v. Roe, 650 A.2d 94, 103 (Pa. Super. Ct. 1994)). However, sovereign immunity may not preclude such claims if a claimant demonstrates that a public official or employee was acting outside the scope of his or her duties when the tort occurred. "'[A]n assault committed by an employee upon another for personal reasons or in an

20

outrageous manner is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of his or her employment.'" Id. at 399 (quoting Costa v. Roxborough Mem'l Hosp., 708 A.2d 490, 493 (Pa. Super. Ct. 1998)).

At Count VII of the Complaint, Plaintiff alleges that C.O. Beers slammed him into an elevator doorway while escorting him from the medical unit of SCI-Pittsburgh to the RHU on the day of Plaintiff's surgery. By slamming Plaintiff into the doorway, C.O. Beers caused Plaintiff's cast to crack and blood to seep through the opening. When confronted, C.O. Beers laughed and said, "oops." He also denied Plaintiff's request to be returned to the medical unit. In their Motions, Defendants argue that such conduct was within the scope of C.O. Beers' duties as a correctional officer. Plaintiff contests this characterization of C.O. Beers' conduct. In order to "go beyond the scope of employment, however, an individual engaging in conduct that is otherwise incidental to the performance of work-related duties must act with a high degree of outrageousness." Ickes, 30 F.Supp.3d at 399 (citing Haas v. Barto, 829 F.Supp. 729, 734-35 (M.D. Pa. 1993)).

While the application of some degree of force may be warranted when correctional officers are moving inmates from one section of a prison to another, when viewed in the light most favorable to Plaintiff, the facts pled in the Complaint demonstrate that C.O. Beers' action may have gone well beyond what the circumstances could possibly have justified. Thus, the Court will not dismiss Count VII on the grounds of sovereign immunity at this early stage of the case. The Court will be in a better position to consider such an argument following a full development of the factual record, should Defendants raise same at summary judgment. Zion v. Nassan, 283 F.R.D. 247, 268 (W.D. Pa. 2012).

## 2. Intentional Infliction of Emotional Distress - Count VIII

In the Motions to Dismiss, Defendants argue that the IIED claim should be dismissed because of sovereign immunity and the failure to plead the essential elements of the alleged cause of action.

The applicability of sovereign immunity again comes down to whether the conduct of Defendants fell within the scope of their duties as employees of the state. The Pennsylvania Supreme Court has yet to formally recognize a cause of action for IIED; however a claim for IIED would – in theory – require showing that a defendant's conduct was: "(1) extreme and outrageous, (2) intentional or reckless, and (3) caused severe emotional distress." Bryan v. Erie Cnty. Office of Children & Youth, 861 F.Supp.2d 553, 585 (W.D. Pa. 2012). Liability must be premised on behavior "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Id. (quoting Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998)). The tort is to be narrowly construed. Id. at 586 (citing Shaffer v. Nat'l Can Corp., 565 F.Supp. 909, 914 (E.D. Pa. 1983)).

A showing of deliberate indifference in the Section 1983 context will not suffice. Bryan, 861 F.Supp.2d at 586. "Liability for intentional infliction of emotional distress is 'reserved by the courts for only the most clearly desperate and ultra extreme conduct.'" Id. at 585 (quoting Hoy, 720 A.2d at 754). It is also not enough to allege facts which show only that a defendant intended to commit a tort or crime, or that he or she sought to cause emotional distress; the "'requisite intention which one must display for liability to be imposed is knowledge on the part of the actor that severe emotional distress is substantially certain to be produced.'" Id. (quoting Hoffman v. Memorial Osteopathic Hosp., 492 A.2d 1382 (Pa. Super. Ct. 1985)).

Conduct illustrative of the degree of depravity required to sustain an IIED claim has included: (1) a defendant striking and killing a plaintiffs' son with his automobile, failing to render aid or notify authorities, and burying the body in a field where it was discovered two months later and returned to plaintiffs, Papieves v. Lawrence, 263 A.2d 118 (Pa. 1970); (2) a defendant's intentional fabrication of records suggesting plaintiff killed a third party, resulting in indictment of plaintiff for homicide, Banyas v. Lower Bucks Hosp., 437 A.2d 1236 (Pa. Super. Ct. 1981); and (3) a defendant's release of information suggesting that a plaintiff was suffering from a fatal disease, when the defendant knew the information to be untrue, Chuy v. Phila. Eagles Football Club, 595 F.2d 1265, 1273-74 (3d Cir. 1979).

Presently, Plaintiff's Complaint alleges that C.O. Beers intended to instill anxiety and fear of future attacks; C.O. L. Johnson, C.O. Brewer, C.O. Timberman, C.O. Gannon, C.O. Cavanaugh, Sergeant F.J. Johnson, and Lieutenant R. Washington intended to instill anxiety and fear for his health and well-being; Scire intended to induce distress by interfering with the grievance process; and, Capozza intended to instill a general sense of terror and apprehension in the prison by failing to restrain the conduct of his correctional officers as a means of controlling inmates. ECF No. 4 ¶¶ 115-22. However, it is not enough to plead that a defendant acted with the intention to cause emotional distress; there must be extreme conduct and knowledge on the part of the defendant that severe emotional distress is substantially certain to follow. Plaintiff has not pled facts sufficient to make such a showing. Accordingly, Count VIII will be dismissed.

## V. CONCLUSION

Based upon the foregoing, Defendants' Partial Motions to Dismiss, ECF Nos. 17 and 38, shall be granted in part and denied in part. The Court finds that the following counts of the Complaint must be dismissed for failure to state claims upon which relief may be granted: Count

23

II as to Scire and Capozza; Count III as to Wood and Capozza; and Count VIII as to all Defendants. In all other respects, the Partial Motions to Dismiss are denied.

Thus, at this point, the remaining claims are Count I, Count II (as to Defendants Beers, L. Johnson, Brewer, Timberman, Gannon, Cavanaugh, F.J. Johnson and Washington only), Count III (as to Defendant Washington only), Count IV, Count V, Count VI and Count VII.

To the extent Plaintiff determines that he can remedy the identified deficiencies as to Counts II, III and VIII, he may file an Amended Complaint by December 20, 2017.

An appropriate order follows.

## ORDER

AND NOW, this 15th day of November, 2017, IT IS HEREBY ORDERED that Defendants' Partial Motions to Dismiss, ECF Nos. 17 and 38, are GRANTED as to Count II as to Defendants Scire and Capozza; Count III as to Defendants Wood and Capozza; and Count VIII as to all Defendants. In all other respects, the Partial Motions to Dismiss are DENIED.

To the extent Plaintiff determines that he can remedy the identified deficiencies as to Counts II, II and VIII, he may file an Amended Complaint by December 20, 2017. If Plaintiff does not file an Amended Complaint by that date, the aforementioned counts will be dismissed with prejudice and Defendant Wood will be terminated from the case.

BY THE COURT,

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

24

Dated: November 15, 2017

cc:     Roberto Camacho, Jr.
        JP-1043
        SCI Huntingdon
        1100 Pike Street
        Huntingdon, PA 16654

        All Counsel of Record via CM-ECF